UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANNA MARIE DAVIS, | : | CIVIL ACTION NO. 11-3036 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**COOPER, District Judge**

The plaintiff, Anna Marie Davis, applies for judicial review of
the final decision of the defendant, Commissioner of Social Security
("Commissioner"), denying her claims for Disability Insurance
Benefits ("DIB"). (Dkt. entry no. 1, Compl.) The Court has
jurisdiction pursuant to 42 U.S.C. § 405(g). The Court, for the
reasons stated herein, will affirm the Commissioner's decision.

**BACKGROUND**

The plaintiff filed a claim for DIB on July 27, 2006, alleging
that she became unable to work on March 31, 2004. (Administrative
Record ("A.R.") at 138.) The Commissioner denied the claim on
October 10, 2006. (Id. at 88-89.) The plaintiff filed a request for
a hearing before an administrative law judge ("ALJ"). (Id. at 110.)
An ALJ conducted a hearing on June 25, 2008, in which the plaintiff
was represented by counsel. (Id. at 60-87.

The ALJ issued a decision on July 17, 2008, finding, inter alia,
that (1) the plaintiff "meets the insured status requirements of the

Social Security Act through December 31, 2009"; (2) the plaintiff "has

not engaged in substantial gainful activity since March 31, 2004, the

alleged onset date of disability"; (3) the plaintiff "has the

following severe impairments:  fractured arm, back pain, and

headaches (20 C.F.R. 404.1520(c))"; (4) the plaintiff "does not have

an impairment or combination of impairments that meets or medically

equals one of the listed impairments in 20 C.F.R. Part 404, Subpart

P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)"; (5)

the plaintiff "has the residual functional capacity to perform light

work as defined in 20 C.F.R. 404.1567(b), except she can:  use the

right (dominant) upper extremity for gross but no fine manipulation;

do simple and repetitive tasks due to loss of concentration because

of pain from headaches and effects of pain medication; and, alternate

sitting and standing at her election due to back problems"; (6) the

plaintiff "is unable to perform any past relevant work (20 C.F.R.

404.1565)" as a clerical worker because it "involved fine

manipulations"; (7) the plaintiff "was thirty-six years old, which

is defined as a younger individual age 18-44, on the alleged

disability onset date (20 C.F.R. 404.1563)"; (8) the plaintiff "has

at least a high school education and is able to communicate in English

(20 C.F.R. 404.1564)"; (9) "transferability of job skills is not

material to the determination of disability . . . (See SSR 82-41 and

20 C.F.R. Part 404, Subpart P, Appendix 2)"; (10) there are "jobs that

exist in significant numbers in the national economy that the

[plaintiff] can perform (20 C.F.R. 404.1560(c) and 404.1566)"; and (11) the plaintiff "has not been under a disability, as defined in the Social Security Act, from March 21, 2004 through the date of this decision (20 C.F.R. § 404.1520(g))."  (Id. at 90-101.)

The ALJ concluded that the plaintiff was not entitled to DIB payments.  (Id. at 90-92.)  The plaintiff requested review of the ALJ's decision by the Social Security Administration Appeals Council ("Appeals Council") on September 6, 2008.  (Id. at 133-34.)  The Appeals Council remanded the plaintiff's case to the ALJ for, inter alia, further consideration of evidence and clarification of plaintiff's subjective complaints, mental impairments, and residual functional capacity.  (Id. at 104.)

The ALJ held a supplemental hearing on March 25, 2009.  (Id. at 26-51.)  The ALJ then issued a decision on June 2, 2009, finding, inter alia, that (1) the plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2009"; (2) the plaintiff "has not engaged in substantial gainful activity since March 31, 2004, the alleged onset date"; (3) the plaintiff "has the following severe impairments:  lumbosacral disc bulge with pain syndrome and status-post right arm fracture with residual pain syndrome (20 C.F.R. 404.1520(c))"; (4) the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526)"; (5) the plaintiff

3

"has the residual functional capacity to perform sedentary work as
defined in 20 C.F.R. 404.1567(a) except no continual and repetitive
head movements; no continual and repetitive fine fingering
manipulations; must alternate sit/stand election; and is limited, due
to pain/medication, to simple, unskilled work which entails
understanding, carrying out and remembering simple instructions;
responding appropriately to supervision, coworkers; and usual work
situations; and dealing with changes in a routine work setting"; (6)
the plaintiff "is unable to perform any past relevant work (20 C.F.R.
404.1565)" including "clerical and other secretarial jobs"; (7) the
plaintiff "was 36 years old, which is defined as a younger individual
age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563)";
(8) the plaintiff "has at least a high school education and is able
to communicate in English"; (9) "transferability of job skills is not
material to the determination of disability . . . (See SSR 82-41 and
20 C.F.R. Part 404, Subpart P, Appendix 2)"; (10) "considering the
[plaintiff's] age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers
in the national economy that the [plaintiff] can perform (20 C.F.R.
404.1560(c) and 404.1566)"; and (11) the plaintiff "has not been under
a disability, as defined in the Social Security Act, from March 21,
2004 through the date of this decision (20 C.F.R. 404.1520(g))."
(Id. at 16-21.)

The ALJ concluded that the plaintiff was not entitled to DIB. (Id. at 11-22.)  The plaintiff requested review of the ALJ's June 2, 2009 decision by the Appeals Council on July 30, 2009.  (Id. at 8.) The Appeals Council acknowledged receipt of additional evidence, found no reason to review the ALJ's decision, and denied plaintiff's request for review on April 19, 2011.  (Id. at 1-5.)

## DISCUSSION

### I.   Standard of Review

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g). The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing.  Id.  However, this judicial review is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence.  Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the context of a social security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla," i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation and citations omitted).  This standard "is deferential and includes deference to inferences drawn from the facts if they,

5

in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

Despite the deference given to administrative decisions under this standard, the Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995). The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion. Schaudeck, 181 F.3d at 435.

## II.  Determining Eligibility for Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A). An individual is determined to be disabled if the
individual's "physical or mental impairment or impairments are of
such severity that [the individual] is not only unable to do his [or
her] previous work but cannot, considering his [or her] age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy." Id.
§ 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a
person is "disabled." In the first step, the ALJ determines whether
the claimant is currently engaged in "substantial gainful activity."
20 C.F.R. § 404.1520(a)(4)(i). If the claimant is so engaged, the
ALJ will find that the claimant is not disabled and deny the
application for disability benefits. Id. § 404.1520(b). If the
claimant is not employed, the ALJ will consider the medical severity
and duration of the claimant's impairment or combination of
impairments in the second step. Id. § 404.1520(a)(4)(ii). A
"severe impairment" is one that significantly limits the claimant's
physical or mental ability to do basic work activities, including,
inter alia, (1) sitting, lifting, and speaking, (2) responding
appropriately to supervision and co-workers, and (3) understanding,
carrying out, and remembering instructions. Id. § 404.1521(a)-(b).
A claimant not meeting this requirement is not disabled. Id. §
404.1520(c). Thus, the second step requires a threshold-level

demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the C.F.R.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage.  Id. § 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four.  Id. § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. § 404.1520(a)(4)(iv).  The claimant, if able to resume the previous work, will not be considered disabled. Id.  If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. § 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  Id.  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

**III. Analysis of the Plaintiff's Claim**

The plaintiff argues that the ALJ's findings are not supported by substantial evidence.  (Dkt. entry no. 14, Pl. Br. at 15.) Specifically, the plaintiff argues that the ALJ (1) failed to consider Dr. Williamson's consultative examination report stating that she suffered from major depression and anxiety; (2) failed to consider the effects of medication on the plaintiff's ability to work as required by SSR 95-5p; (3) improperly concluded that the plaintiff was not disabled "based upon the ALJ's own medical opinion"; (4) gave no reason why he "gave little or no weight" to the plaintiff's treating physician's opinions; (5) made "conclusory" findings "not supported by the medical evidence" in determining the plaintiff's RFC; (6) "ignore[d] the severity of and the significant impact [that] the plaintiff's mental impairments would have on her ability to work"; and (7) "failed to construct hypotheticals 'which accurately portray[ed] the [plaintiff's] individual physical and mental limitations.'"  (Id. at 19-24).  The Commissioner argues, in contrast, that the "decision that [the] plaintiff was not disabled

9

is supported by substantial evidence" provided by the reports of Drs. Christopher Williamson (upon whom the plaintiff contends the ALJ failed to rely), Michael Britton, and Deogracias Bustos.  (Dkt. entry no. 15, Def. Br. at 2.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981).  Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  Id.

The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quotation and citation omitted).  This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  The Court, without an indication as to what evidence the ALJ considered

or rejected, "cannot tell if significant probative evidence was credited or simply ignored." Id. Although the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," the ALJ's findings must provide "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

The Court need not examine the ALJ's step one determination that the plaintiff has not engaged in work activity after her alleged disability onset date. (A.R. at 16.) The plaintiff does not challenge the ALJ's finding at step two that the plaintiff suffered from two severe impairments, lumbosacral disc bulge with pain syndrome and status-post right arm fracture with residual pain syndrome. (Id.) The plaintiff also does not challenge the ALJ's finding at step three that the plaintiff did not automatically qualify as disabled under any "listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id. at 17.)[1]

Step four is not in dispute to the extent that the ALJ found that the plaintiff could not perform any past relevant work. (See A.R. at 20.) However, the plaintiff objects to the ALJ's RFC determination as well as the ALJ's construction of the hypothetical questions posed to the vocational expert ("VE"). (Pl. Br. at 22-24.)

---

[1] "The plaintiff is not arguing that her mental impairments are of Listing severity but rather they are significant enough to [a]ffect her ability to perform basic work related functions." (Dkt. entry no. 16, Pl. Reply Br. at 2.)

11

Therefore, the Court will address the ALJ's determinations at step four and step five of the sequential analysis.

The plaintiff contends that the ALJ's determination of her RFC was "merely conclusory" and "not supported by the medical evidence." (Id.)  The ALJ found that the plaintiff has the RFC to perform sedentary work, but cannot make continual and repetitive head movements or fine fingering manipulations, and "must alternate sit/stand election."  (A.R. at 18.)  The ALJ further found that the plaintiff is "limited to simple, unskilled work which entails understanding, carrying out and remembering simple instructions," yet can respond appropriately to supervision, coworkers, usual work situations, and "changes in a routine work setting."  (Id.)  The plaintiff raises several objections to the ALJ's RFC determination, which the Court addresses below.

### A.   ALJ's Consideration of the Plaintiff's Mental Impairments

The plaintiff argues that the ALJ erred in (1) determining that the plaintiff's mental impairments were not severe, and (2) using 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing") to determine the severity of the plaintiff's mental impairments.  (Pl. Br. at 16.)

The Court disagrees on both counts.  Substantial evidence supports the ALJ's finding that the plaintiff's mental impairments were not severe.  Additionally, the ALJ correctly considered the functional limitations of the plaintiff's mental impairments in determining her ability to perform substantial gainful activity.

12

The ALJ must "first assess the nature and extent of [the plaintiff's] mental limitations and restrictions and then determine [her] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). If the plaintiff's mental impairments do not meet or sufficiently equal the criteria of any Listing, then the ALJ determines the plaintiff's RFC in light of a functional evaluation based on the plaintiff's (1) "activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).

The plaintiff does not argue that her mental impairments meet or equal a specified listing. (Pl. Reply Br. at 2.) Therefore, the ALJ correctly relied on the evaluation of the areas of functional limitation in determining that the plaintiff was capable of performing "unskilled, repetitive work," and "responding appropriately" to supervision, coworkers, usual work situations, and changes in a routine work setting. (A.R. at 18, 20.)

The plaintiff argues that the ALJ failed to consider Dr. Williamson's consultative examination report in determining that the plaintiff's mental impairments were not severe. The plaintiff further argues that her mental impairments are "significant enough to [a]ffect her ability to perform basic work related functions." (Pl. Reply Br. at 2.)

13

The record shows that the ALJ considered Dr. Williamson's consultative examination report in determining that the plaintiff's mental impairments were not severe.  (A.R. at 17 (discussing plaintiff's mental impairments as stated in Exhibit 6F, Dr. Williamson's consultative examination report).)  While Dr. Williamson diagnosed the plaintiff with major depressive disorder and generalized anxiety disorder, Dr. Williamson found no evidence of a "formal thought disorder," "compulsions in thinking, and/or behavior," or "issues of suicidal ideation."  (Id. at 295.)  Dr. Williamson further found that the plaintiff's "verbalizations were clear, coherent and goal-directed."  (Id.)  The plaintiff complained of "attention, concentration, and short-term memory difficulties," but "she could repeat up to 5 digits forward and 4 digits backward," and "recall 3 out of 3 common objects at 5 to 10 minute intervals."  (Id.)  However, the plaintiff was unable to "state serial 7's subtracting 7 from 100 in reverse order."  (Id.)

The ALJ considered Dr. Williamson's findings in the context of additional objective evidence in the record.  Specifically, the ALJ reviewed the plaintiff's limitations based on the "four broad functional areas" and concluded that the plaintiff had mild functional limitations in the areas of (1) activities of daily living; (2) social function; and (3) concentration, persistence or pace. (Id. at 17.)  See 20 C.F.R. § 404.1520(a)(3).  Further, the plaintiff did not experience any episodes of decompensation.  (Id.)

14

If a plaintiff's degree of functional limitation in the first three areas is "mild" and "none" in the fourth area, then the ALJ will "generally conclude that [the plaintiff's] impairment(s) is not severe."  20 C.F.R. § 404.1520(a)(3)(1).  The ALJ properly applied the functional limitation criteria in assessing the severity of the plaintiff's mental impairments.  The ALJ's determination that the plaintiff's mental impairments were not severe is supported by both Dr. Britton's psychiatric review of the plaintiff's functional limitations and Dr. Williamson's consultative examination report. (See A.R. at 294-96, 307 (failing to identify symptoms or effects beyond "feeling . . . jumpy and nervous").)

The plaintiff contends that the Commissioner's references to Dr. Britton and Dr. Bustos as "highly qualified psychiatrist[s]" are not supported by the record.  (Pl. Reply Br. at 3-4.)[2]  However, the ALJ must "consider findings and other opinions of . . . psychological consultants . . . and other medical specialists as opinion evidence." 20 C.F.R. § 404.1527(e)(2)(i).  When conflicting objective evidence in the record exists, the ALJ must decide which evidence is more persuasive.  In making this determination, the ALJ may not make

---

[2] Dr. Britton is a practicing psychologist licensed by the New Jersey State Board of Psychological Examiners.  See New Jersey Division of Consumer Affairs, https://newjersey.mylicense.com/verification/Details.aspx?agency_id=1&license_id=6188& (last visited July 3, 2012).  Dr. Bustos is a medical doctor licensed by the New Jersey State Board of Medical Examiners.  See New Jersey Division of Consumer Affairs, https://newjersey.mylicense.com/verification/Details.aspx?agency_id=1&license_id=646770& (last visited July 3, 2012).

speculative inferences from medical reports and may not interject his own medical analysis.  See, e.g., Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985); Califano, 637 F.2d at 972.  The ALJ may, however, consider all of the relevant medical evidence, decide which evidence to credit, and explain why he chose to favor one medical opinion over another.  See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009).  The ALJ's conclusion that the plaintiff is not "psychiatrically impaired" to the extent that she is prevented from performing "even low stress work" is supported by Dr. Britton's psychological evaluation of the plaintiff.  (A.R. at 20.)  Even if Dr. Britton's evaluation failed to support Dr. Williamson's consultative examination report, the ALJ was entitled to favor the opinion which he found more persuasive provided that he explained his decision.  (See A.R. at 17-19.)

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer, 186 F.3d at 429 (internal citations omitted).  Additionally, "[i]n considering a claim for disability benefits, greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant."  Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994).  However, when a conflict in the evidence exists, the ALJ may

choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).

The ALJ considered the plaintiff's own testimony regarding her functional limitations and determined that she performs activities of daily living, such as driving a car, personal care, and light cooking without difficulty, "handles routine changes fairly well," and "pay[s] attention 'as long as [she] has to.'" (A.R. at 19, 195.) The plaintiff's testimony further demonstrates that she handles stress "fairly well" and gets along with authority figures "fairly well." (Id. at 195.) Additionally, the ALJ found that the plaintiff's anxiety and depression are controlled with medication. (Id. at 19, 40-41.) The ALJ rejected the plaintiff's treating physician Dr. Golding-Granado's assessment that plaintiff was incapable of low stress work because that "assessment [was] inconsistent with objective evidence and even the claimant's own allegations." (Id. at 20.) The ALJ determined that the plaintiff was not "psychiatrically impaired"; thus, the ALJ found no evidence that the plaintiff was "incapable of even low stress work." (Id.) We find that the ALJ provided adequate reasons for rejecting Dr. Golding-Granado's opinion.

### B.  ALJ's Determination of the Plaintiff's RFC

The plaintiff argues that the ALJ's determination of her RFC was not based on objective medical evidence.  First, the plaintiff argues

17

that the ALJ failed to include the plaintiff's mental impairments in her RFC assessment.  (Pl. Br. at 18.)  Second, the plaintiff argues that the ALJ failed to consider the side effects of the plaintiff's medications.  (Id. at 19.)  Third, the plaintiff argues that the ALJ failed to give controlling weight to the plaintiff's treating physicians' opinions.  (Id. at 22.)  Fourth, the plaintiff argues that the assessment of her RFC was not based on objective medical evidence.  (Id. at 21.)

The Court disagrees.  At step four and step five, the ALJ "must determine whether the claimant retains the ability to perform either his [or her] former work or some less demanding employment." Pearson v. Barnhart, 380 F.Supp.2d 496, 504 (D.N.J. 2005) (quotation and citation omitted).  An RFC is defined as what an individual "can still do despite [his or her] limitations. . . . If [the plaintiff] can meet his or her past work demands, then he or she is not disabled within the meaning of the Act."  Id. (quotation and citation omitted). Here, the ALJ adequately explained the basis for the RFC to perform sedentary work limited by the inability to perform continual and repetitive head movements or fine fingering manipulations.  (See A.R. at 18, 49.)  The ALJ further determined that the plaintiff must have the ability to sit and stand at her election, and be restricted to simple and repetitive tasks.  (Id.)  The Court will address each of the plaintiff's claims in turn.

The plaintiff first claims that the ALJ failed to include her mental impairments in her RFC.  (Id. at 18.)  The RFC must "identify the individual's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545."  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis."  Jones, 364 F.3d at 505.  Here, the ALJ did perform the required analysis and detailed his findings in his decision.  (A.R. at 18-20.)  The ALJ properly took into account the plaintiff's mental impairments, "assess[ing] the nature and extent of [the plaintiff's] mental limitations and restrictions."  20 C.F.R. § 404.1545(c)-(d).  Based on a full review of the record, the ALJ concluded that the plaintiff's "complaints of depression and anxiety . . . [do] not cause more than minimal limitation in the [plaintiff's] ability to perform basic mental work activities." (A.R. at 17.)  The ALJ considered the plaintiff's subjective complaints of depression and anxiety, but found that these "feelings . . . are abated with anti-depressant medication."  (Id. at 19; see also id. at 40-41.) Moreover, the ALJ did list certain nonexertional limitations in the plaintiff's RFC, which take into account the plaintiff's mental limitations:  "[the plaintiff] is limited to "simple, unskilled work which entails understanding, carrying out and remembering simple instructions."  (Id. at 18.)  The ALJ concluded

19

that, based upon the plaintiff's "mild" limitation in the functional areas of activities of daily living; social functioning; and concentration, persistence, and pace, the plaintiff was able to respond appropriately to supervisors, coworkers, usual work situations, and changes in a routine work setting.  (Id.)

The plaintiff argues that the ALJ failed to consider the effect of plaintiff's medications on her ability to perform substantial gainful activity.  The ALJ questioned the plaintiff regarding any side effects caused by her medications.   The plaintiff responded that her medication "makes [her] very sleepy" and nauseated "some of the time."  (Id. at 39-40.)  The record indicates that the plaintiff stated in her disability report dated December 1, 2006, that she experiences drowsiness and nausea, but the record fails to suggest that the plaintiff reported these side effects to her treating physicians or that her medications were adjusted for poor toleration. See Grandillo v. Barnhart, 105 Fed.Appx. 415, 419 (3d Cir. 2004) (holding that plaintiff's "own conclusory statements" did not "establish a sufficient on-going struggle with any side effects"). In fact, Dr. Golding-Granado's records indicate that the plaintiff's dosage of Inderal, which the plaintiff stated causes her to feel "tired" and "nauseous," was increased on October 10, 2008.  (A.R. at 218, 344.)  However, in determining the plaintiff's RFC, the ALJ took into account the plaintiff's complaints of her "pain/medication"

effects to the extent that such effects limited her RFC to "simple, unskilled work."  (<u>Id.</u> at 18.)

The plaintiff contends that the ALJ failed "to explain why he [gave] little weight or no weight" to the plaintiff's treating physicians' opinions in accordance with 20 C.F.R. § 404.1527(d)(2).[3] (Pl. Br. at 22.)  The plaintiff also contends that the ALJ failed to cite to "a single piece of contradictory evidence."  (<u>Id.</u>)

The Court disagrees.  The ALJ performed an exhaustive review of the plaintiff's medical records.  (<u>See</u> A.R. at 16-21 (discussing plaintiff's medical records).)  The ALJ considered those records in the context of testimony from the plaintiff.  (<u>Id.</u> at 20-21.)  The record shows that the ALJ considered the opinions offered by the plaintiff's treating physicians, Drs. Golding-Granado and Lopez. (<u>Id.</u> at 18-20.)  The record includes several reports by Dr. Golding-Granado, the plaintiff's treating physician, which the ALJ considered, but ultimately gave little weight to in determining the plaintiff's RFC because the ALJ found that these opinions were not

---

[3] "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

"consistent with objective and other evidence."  (Id. at 325-29, 343-68.)

The plaintiff argues that the ALJ rejected her treating physicians' opinions without stating a reason for his rejection. (Pl. Br. at 19.)  The ALJ's decision indicates, however, that the ALJ considered but ultimately "[did] not give any weight" to Dr. Golding-Granado's conclusion that the plaintiff was unable to work, because "[Dr. Golding-Granado] assessed that [the plaintiff] was unable to perform any sitting, standing, walking, lifting or carrying in an 8 hour workday." (A.R. at 19.)  The ALJ found that Dr. Golding-Granado's assessment was "inconsistent with the objective evidence and even the [plaintiff's] own allegations that she lives alone and cooks, food shops, does laundry, etc." (Id.)

The Court finds that the ALJ relied on objective evidence in the record that contradicts Dr. Golding-Granado's assessment.  First, Dr. Rosario's report dated June 27, 2006, states that the plaintiff's neck, back, and spine demonstrate a "full range of motion."  (Id. at 279.)  Dr. Rosario further noted that plaintiff's grips and foot pushes were "strong and equal." (Id. at 278.)  Dr. Rosario determined that the plaintiff suffered from migraines which were worse because the plaintiff had "been off of Lexapro," her medication for migraines.  (Id. at 279.)

Ani Ortho Group's report dated August 2, 2006, indicates that the plaintiff's joints have "full passive range of motion." (Id. at

22

280.)[4]  The Ani Ortho Group report also indicates that the
plaintiff's "gait and station is normal," although she suffers from
migraines.  (Id. at 289.)  Ani Ortho Group's report additionally
found that the plaintiff's pain was "qualitatively" rated as severe.
(Id. at 292.)

Dr. Bustos's physical RFC assessment stated that the plaintiff's
primary diagnosis was "migraine headaches" and found that during an
eight-hour work day, the plaintiff could:  occasionally lift and/or
carry twenty pounds; frequently lift and/or carry ten pounds; stand
and/or walk for a total of six hours; sit for a total of six hours;
push and/or pull; and never balance or crawl.  In Dr. Bustos's
judgment, the "degree of [the plaintiff's] alleged difficulties [was]
not fully supported by objective findings."  (Id. at 316.)

Dr. Lopez, the plaintiff's treating orthopedist, indicated in
a RFC questionnaire completed on November 11, 2007, that during an
eight-hour work day, the plaintiff could sit, stand, walk less than
two hours, and should break to walk for five minutes at twenty minute
intervals.  (A.R. at 334.)  A second medical report by Dr. Lopez,
dated June 28, 2007, indicated that the plaintiff could stand and/or
walk up to two hours per eight-hour work day and sit less than six
hours per eight-hour work day.  Dr. Lopez's MRI examination of the
plaintiff indicated "mild disc bulging," and "slight disc

---

[4] The plaintiff was treated for a right wrist contusion in November
2005, which the ALJ properly found "did not result in any
abnormalities."  (A.R. at 19, 292.)

desiccation," but "no focal disc herniation or significant spinal stenosis." (Id. at 340.) Dr. Lopez stated that the plaintiff "is able to actively move her upper and lower extremities," as well as "flex and extend with good strength at the elbow, wrists and fingers." (Id. at 339.)

The ALJ, in assessing the plaintiff's RFC, stated that he "accorded great weight" to Dr. Lopez's assessment dated June 28, 2007, but he rejected Dr. Lopez's finding that the plaintiff was only capable of sitting less than six hours in an eight-hour workday. (Id. at 20.) Given that Dr. Lopez's own assessments are inconsistent, and based on the physical examinations conducted by other medical specialists in the record, the ALJ was not required to give controlling weight to Dr. Lopez's opinion. 20 C.F.R. § 404.1527(c)(2)(ii) (explaining that inconsistency and lack of supportability are factors to consider when determining the weight given to opinions); see also id. § 404.1527(e) (reserving the question of whether a person is disabled and unable to work to Commissioner as opposed to opinion of a medical source); SSR 96-5p, "Medical Source Opinions on Issues Reserved to the Commissioner," 1996 WL 374183 (S.S.A. July 2, 1996) (distinguishing between treating source opinions and Commissioner's administrative ruling on RFC and noting that a treating source's opinion on issue of whether an individual is disabled is "reserved to the Commissioner . . . . [E]ven when

24

offered by a treating source, they can never be entitled to controlling weight or given special significance.").

The ALJ's determination of the plaintiff's RFC took into account the exertional limitations expressed by Dr. Lopez, as well as the other medical opinions in the record, and thus is supported by substantial evidence.  Additionally, Dr. Golding-Granado's reports appear internally inconsistent, insofar as some of Dr. Golding-Granado's conclusions were based on the plaintiff's complaints rather than objective measures or personal observation. (See A.R. at 336-37 (noting that plaintiff's "chronic physical pain" and "neuropathic pain" render her "unable to work").)  The ALJ may exclude the plaintiff's subjective complaints of pain when there is little evidence to support such claims, and there is evidence that medication relieves the pain.  Cruz v. Comm'r of Soc. Sec., 244 Fed.Appx. 475, 481 (3d Cir. 2007).  When the ALJ asked the plaintiff whether Roxicodone alleviates her pain, the plaintiff responded, "Yes."  (A.R. at 40.)

The ALJ properly considered the plaintiff's own testimony that she lives alone, prepares small meals, drives a car, reads, writes poetry, cares for a cat, and performs household chores.  See Cerrato v. Comm'r of Soc. Sec., 386 Fed.Appx. 283, 286 (3d Cir. 2010) (holding that plaintiff's inability to perform low stress work was unsubstantiated by objective medical evidence and inconsistent with her reports of her ability to perform household chores, use public

25

transportation, and occasionally assist at her sister's convenience store).  The ALJ concluded that the plaintiff's testimony undermines Dr. Golding-Granado's findings that the plaintiff is incapable of sitting, standing, or walking for any amount of time during an eight-hour workday.  (A.R. at 19, 327.)  The ALJ was therefore not required to accept Dr. Golding-Granado's conclusion that the plaintiff's symptoms render the plaintiff unable to work.  The ALJ was also not required to accept Dr. Lopez's finding that the plaintiff was limited to sitting less than six hours in an eight-hour workday.

**C.   Sufficiency of the ALJ's Explanation at Step Five**

The plaintiff also argues that the ALJ failed to include "the plaintiff's mental limitations" in the hypothetical questions posed to the VE.  (Pl. Br. at 24.)  Specifically, the plaintiff argues that the hypotheticals excluded the limitations caused by her depression, anxiety, and difficulties with attention, concentration, and short-term memory.  (Id.)  The ALJ found that the plaintiff was capable of performing "unskilled, repetitive work." (A.R. at 17-18.) When an ALJ poses a hypothetical to a VE, that hypothetical must include all of the plaintiff's impairments that are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  If the hypothetical does not include all of the plaintiff's impairments, then it is deficient.  Id.

This Court finds no merit to the plaintiff's contention that the ALJ's hypothetical posed to the VE did not accurately portray the

plaintiff's physical and mental impairments.  Such a hypothetical
need only "fairly set forth every credible limitation established by
the physical evidence."  Plummer, 186 F.3d at 431.  The ALJ need not
"submit to the vocational expert every impairment alleged by a
claimant."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).
The ALJ's hypotheticals, which reduced the plaintiff's RFC to the
ability to perform sedentary work, included impairments which were
not credibly established on the record.  (A.R. at 18.)  The ALJ took
into account all of the evidence set forth in the record, including
"many of the [plaintiff's] alleged limitations," and reduced the
plaintiff's RFC from the ability to perform light work, determined
during the first hearing, to the ability to perform sedentary work,
determined during the second hearing.  (Id. at 20, 96.)  The ALJ
further determined that the plaintiff's RFC was restricted to
unskilled and repetitive work.  (Id. at 18.)

   Only those impairments that are medically undisputed need to be
included in the hypotheticals posed to the VE.  Podedworny v. Harris,
745 F.2d 210, 218 (3d Cir. 1984).  No basis therefore existed for the
ALJ to include the plaintiff's mental impairments insofar as they
would limit the plaintiff's ability to perform less than unskilled
and repetitive work.  Cf. Burns v. Barnhart, 312 F.3d 113, 122-24 (3d
Cir. 2002) (holding that a hypothetical restricting plaintiff to
"simple, routine, repetitive work" could not account for plaintiff's
borderline intellectual functioning).  Here, the plaintiff's

27

functional limitations were mild, and the plaintiff's depression and anxiety were controlled with medication.  (A.R. at 41, 279, 294-96, 307.)  The ALJ considered the plaintiff's mental impairments and determined that she was able to respond appropriately to supervisors, coworkers, usual work situations, and changes in a routine work setting.  (Id. at 18.)  Given that the ALJ's hypotheticals took into account the scope of the plaintiff's established impairments, including her (1) lumbrosacral disc bulge with pain syndrome and status-post right arm fracture with residual pain syndrome (restricting hypotheticals to jobs that do not require continual and repetitive head movements or fine fingering manipulations); (2) her inability to sit and/or stand for a required amount of time (restricting hypotheticals to a "job that required alternate sit/stand at [the plaintiff's] election"); and (3) her inability to perform repetitive work that requires more than "understanding, carrying out, and remembering simple instructions" (restricting hypotheticals to "simple, unskilled work"), the ALJ's hypotheticals posed to the VE, and the ALJ's reliance on the VE's answers, were supported by substantial evidence.  (A.R. at 47-50.)

**CONCLUSION**

For the reasons discussed <u>supra</u>, the Court will affirm the Commissioner's decision denying the plaintiff's claim.  The Court will issue an appropriate Order.


                                                s/ Mary L. Cooper
                                              **MARY L. COOPER**
                                              United States District Judge

Dated:  July 5, 2012